IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRUCE JACOBSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 11-cv-2132-JAR-JPO |
| **JOHNSON COUNTY COMMUNITY** ) | |
| **COLLEGE and CHRISTOPHER** ) | |
| **NASTAV**, ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiff Bruce Jacobson filed this suit against his former school, Johnson County Community College ("JCCC"), and a former JCCC instructor, Christopher Nastav, alleging discrimination under the Americans with Disabilities Act ("ADA"). Against defendant JCCC, plaintiff further alleges a state law claim for negligent hiring, retention, and supervision. Against Nastav, plaintiff further alleges state law claims for battery and outrage. This case is before the Court on defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 8), which seeks dismissal under Fed. R. Civ. P. 12(b)(5) for insufficient service of process and under 12(b)(6) for failure to state a claim for which relief may be granted. The motion is fully briefed and the Court is prepared to rule. As described more fully below, defendants' motion is granted in part and denied in part.

**I.      Background**

The following facts are alleged in plaintiff's Complaint and construed in the light most favorable to plaintiff. In 2009, plaintiff enrolled in a class at JCCC entitled "Intro to Web Pages: Dreamweaver," and in February and March 2009, Nastav was one of the instructors for

plaintiff's class.

Plaintiff has lived with multiple sclerosis for almost forty years. He requested assistance from JCCC regarding his disability, but was only told where the disabled parking areas were located. At no time did JCCC attempt to assist plaintiff in working with his instructors in altering his classes to his physical and mental limitations.

Due in part to his multiple sclerosis, plaintiff encountered problems in following Nastav's instructions throughout the CWEB 105 class. On several occasions during the class, Nastav, out of frustration, grabbed the computer mouse out of Jacobson's hand in order to "catch him up" with the rest of the class. On March 12, 2009, after plaintiff asked Nastav a question during class, Nastav stood behind plaintiff, placed his right hand on plaintiff's right shoulder, grabbed plaintiff's neck with his left hand, and squeezed it with considerable force, and stated that "this is going to be on the test."

Plaintiff filed this case on March 8, 2011. Summons was issued on June 29, 2011; JCCC was served by personal service on July 8, 2011 and Nastav was served by personal service on July 23, 2011.

## II.      Insufficient Service of Process

Defendants first argue that dismissal is appropriate under Fed. R. Civ. P. 12(b)(5) because they were not timely served. Once a defendant challenges service of process in a motion to dismiss under 12(b)(5), the burden falls on the plaintiff to show he has satisfied the statutory and due process requirements with service of process.[1] If service of process is insufficient, the court does not have personal jurisdiction over the defendant.[2]

---

[1] *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1273 (D. Kan. 2011).

[2] *Id.*

Rule 4(m) provides that the plaintiff must serve the defendant with summons and the complaint within 120 days after the complaint is filed.[3]  When the plaintiff shows good cause for the failure to properly serve the defendant within the specified time, however, the plaintiff is entitled to a mandatory extension of time.[4]  Good cause "serves merely as an exception to the general provision by delineating a situation in which an extension of time is *mandatory*."[5]  If the plaintiff does not show good cause, the court must consider whether a permissive extension of time is appropriate and then, in its discretion, can either dismiss the action or order the plaintiff to complete service within a specified time.[6]

There is no dispute that plaintiff failed to serve either defendant within 120 days after the Complaint was filed, by July 6, 2011.  Defendant JCCC was served two days late on July 8 and defendant Nastav was served seventeen days late on July 23.  Defendants urge that plaintiff should not be given an extension of time under Rule 4(m) because he has not shown good cause for the failure.  Plaintiff does not contest that he has not shown good cause for failure to timely serve defendants, such that a mandatory extension of time is warranted.  Indeed, the Court cannot find good cause here given that plaintiff provides no reason for the untimely service.  Instead, plaintiff seeks a permissive extension of time.

When determining whether to grant a permissive extension, courts look at several factors, including whether the defendant had notice of the lawsuit, whether delay has prejudiced the

---

[3] Fed. R. Civ. P. 4(m).

[4] *Id.*

[5] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) (citation omitted).

[6] *Id.*

defendant, and whether the statute of limitations might bar any refiled action.[7]  "An extension of the service period is particularly appropriate where the delay has not prejudiced the defendant and the statute of limitation might bar any refiled action."[8]  In this case, these factors counsel in favor of a permissive extension.  Defendants do not explain how they have suffered prejudice by the nominal delays in service in this matter.  And it is undisputed that the statute of limitations will bar a re-filed action.  Under these circumstances, the Court finds that a permissive extension of the service period should be granted.  Therefore, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(5) is denied.

### III.   Failure to State a Claim

#### A.   Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[9]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[11] but requires more than "a sheer possibility."[12]

---

[7]*Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1273 (D. Kan. 2011) (citing *Mehus v. Emporia State Univ.*, 295 F. Supp. 2d 1258, 1273–74 (D. Kan. 2004); *Searles v. Werholtz*, No. 06-3198-JAR, 2010 WL 4861123, at *3 (D. Kan. Nov. 16, 2010)).

[8]*Rader v. U.S.D. 259 Wichita Pub. Schs.*, No. 10-4118-KHV, 2011 WL 2144834, at *1 (D. Kan. May 31, 2011) (citing *Mehus v. Emporia State Univ.*, 295 F. Supp. 2d 1258, 1273–74 (D. Kan. 2004)).

[9]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[10]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[11]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[12]*Id.*

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[13] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[14]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[15]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[16]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[17]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[18]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19]

Along with its motion, defendants submit evidence outside the pleadings—defendant

---

[13] 550 U.S. 544 (2007).

[14] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[15] *Id.* (citing *Twombly*, 550 U.S. at 556).

[16] *Iqbal*, – U.S. –, 129 S. Ct. at 1949–50.

[17] *Id.* at 1950.

[18] *Id.*

[19] *Id.* at 1949.

Nastav's affidavit.[20]  Generally, "when matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56."[21]  The court has discretion to accept or reject documents attached to a motion to dismiss pursuant to Rule 12(b)(6).[22]  The Court rejects Nastav's affidavit and considers defendants' arguments in the context of a motion to dismiss for failure to state a claim.  The Court declines to consider this evidence in determining that plaintiff's Complaint fails to state a claim upon which relief may be granted under the ADA.

### B. Discussion

#### 1. ADA

Title II of the ADA prohibits discrimination against disabled individuals by public entities.[23]  Defendants first argue that this claim must be dismissed as to defendant Nastav because he is not a person subject to liability under Title II of the ADA.  Plaintiff does not respond to this argument.  Title II defines "public entity" as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[24]  The Court agrees that defendant Nastav, an employee of JCCC, does not constitute a public entity, and therefore, plaintiff's ADA claim against him must be dismissed.[25]

---

[20]Doc. 9, Ex. B.  Defendants also submit Exhibit A, which is a docket sheet from the Johnson County District Court in Case 10CV02248, Jacobson v. Nastav.  Because this docket sheet is not relevant to any of the substantive issues presented on the motion to dismiss, the Court need not consider it.

[21]Fed. R. Civ. P. 12(d).

[22]*Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000).

[23]42 U.S.C. § 12132.

[24]42 U.S.C. § 12131(1)(A) and (B).

[25]*See Rix v. McClure*, No. 10-1224-CM, 2011 WL 166731, at *6 (D. Kan. Jan. 19, 2011); *Hunter v. Correct Care Solutions*, No. 07-3203-SAC, 2007 WL 2954089, at *1 (D. Kan. Oct. 10, 2007).

Defendants next argue that plaintiff has not stated a claim for relief under the ADA against JCCC. To state a claim under Title II of the ADA, plaintiff must allege that: "'(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.'"[26]

There is no dispute that plaintiff has alleged sufficient facts that he is a qualified individual with a disability. On the second element, plaintiff alleges that he requested accommodation from JCCC for his disability and was denied. Plaintiff also alleges that Nastav failed to accommodate his disability in class and, in an act of anger and frustration, grabbed plaintiff's neck and stated that "this is going to be on the test." Defendants contend that these facts are not sufficient to establish that plaintiff was denied programs or services because of his disability.

The Court finds that plaintiff's first alleged violation of the ADA does not contain sufficient factual allegations to put defendant or the Court on notice of his claim. Plaintiff contends that he requested "assistance" from JCCC, but was only told where the disabled parking areas were located. Plaintiff does not allege what type of assistance he requested, whether he was otherwise qualified for this assistance, and whether the denial of such assistance was because of his disability. Plaintiff's general and conclusory allegations are insufficient to state a claim for relief under the ADA. While plaintiff states that he requested accommodation, this is merely a formulaic recitation of an element of his claim, which this Court may not accept as true.

---

[26]*Cohon ex rel. Bass v. N.M. Dept. of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Robertson v. Las Animas Cnty. Sherif"'s Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007)); *see also, e.g.*, *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

Plaintiff next asserts that JCCC violated the ADA when Nastav failed to accommodate his disability in class, alleging that on "several occasions" Nastav grabbed the mouse out of plaintiff's hand in frustration, in order to "catch him up" with the rest of the class. Plaintiff also references the March 12, 2009 incident when Nastav squeezed plaintiff's neck, claiming this constitutes discrimination on the basis of plaintiff's disability. Again, the Complaint fails to allege facts that plaintiff was denied the benefits of JCCC's services, programs, or activities. The Complaint only alleges that plaintiff "encountered problems in following Nastav's instructions," and that Nastav responded in frustration by grabbing plaintiff's mouse, and in one instance, grabbing his neck. These allegations, when assumed to be true, do not give rise to a claim of discrimination under Title II of the ADA. Plaintiff never alleges how JCCC failed to reasonably accommodate his disability—he must allege facts that demonstrate it did not provide "meaningful access" to its programs and services.[27] The facts, as stated, show that plaintiff was provided access to Nastav's class and that he was provided information about parking for disabled individuals. When plaintiff had difficulty following along during class, Nastav took over operating plaintiff's mouse and "caught him up." These facts suggest that some accommodation was made by JCCC. There are no facts that suggest how JCCC failed to reasonably accommodate plaintiff's disability.

Plaintiff states in the response that "even if this Court determines that Jacobson needs greater specificity, this Court should require Jacobson to plead his allegations with greater specificity [rather] than dismiss his complaint." The Court declines to grant plaintiff leave to amend absent a properly filed and supported motion for leave to amend the Complaint.[28]

---

[27] *See Robertson*, 500 F.3d at 1195; 28 C.F.R. § 35.150(a)(3).

[28] *See* Fed. R. Civ. P. 15(a)(2); D. Kan. R. 15.1.

Therefore, the Court will allow plaintiff an additional period of time to file a motion for leave to amend the complaint to allege sufficient facts that, if true, would establish that defendant JCCC violated Title II of the ADA. Plaintiff is reminded that a proposed amendment will be deemed futile if the complaint, as amended, would be subject to dismissal.[29]

### 2. Negligent Hiring, Supervision, or Retention

Count VI of the Complaint alleges a claim against JCCC for negligent hiring, supervision, or retention under Kansas law. Plaintiff alleges that JCCC owed plaintiff a duty of care to ensure that none of its employees posed a significant risk to the safety of JCCC students. The Complaint further alleges that JCCC breached this duty by hiring and/or retaining Nastav despite a prior conviction for assault in Johnson County, Kansas. Defendants argue that JCCC does not have a duty, as a matter of law, to refuse to hire or to terminate an employee based on knowledge of that employee's prior assault conviction.

For the purposes of this motion to dismiss, the Court assumes as true plaintiff's factual allegation that Nastav was convicted of assault. But plaintiff does not allege that JCCC had any knowledge of this conviction. The Kansas Supreme Court has made clear that Kansas law does not hold that "an employer must ascertain the detailed history of every employee, whether criminal or not, and terminate the employment of an individual who is performing acceptable services and is clearly not unfit or incompetent, but who does pose some degree of risk due to previous actions."[30] Plaintiff suggests that there is a heightened duty that applies to an

---

[29]*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investors's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[30]*Schmidt v. HTG, Inc.*, 961 P.2d 677, 695 (Kan. 1998). Negligent supervision is a separate and distinct cause of action from negligent retention and hiring; however they are often discussed by Kansas courts together. *See Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 598 (Kan. 1991); *Prugue v. Monley*, 28 P.3d 1046, 1049–50 (Kan. Ct. App. 2001). Plaintiff's failure to allege that JCCC had any knowledge of Nastav's assault conviction, or some belief that he was a danger to students, is fatal to both claims.

educational institution, but offers no authority for this proposition. Given the clear legal authority that an employer does not have a duty to uncover its employees' criminal histories, plaintiff fails to state a claim upon which relief may be granted against JCCC for negligent hiring, retention, or supervision.

### 3.     Outrage

Count II alleges a claim against Nastav for extreme and outrageous conduct. Under Kansas law, the tort of outrage, or intentional infliction of emotional distress, is comprised of the following elements: "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[31] Defendants argue that plaintiff fails to plead facts that could establish the conduct was extreme and outrageous as a matter of law.

In order to constitute "extreme and outrageous" under Kansas law, the conduct must "be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as utterly atrocious or intolerable in a civilized society."[32] Assuming the facts in the Complaint to be true, defendant Nastav's conduct involved grabbing and squeezing plaintiff's neck with considerable force and telling him that "this is going to be on the test." While the question of whether conduct rises to the level of "extreme and outrageous" is a threshold determination to be made by the Court before trial,[33] this Court is unable to conclude that the facts as alleged do not constitute extreme and outrageous as a matter of law. It is

---

[31]*Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010).

[32]*Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 930 (Kan. 1999).

[33]*Id.*

reasonable to infer from the factual allegations in the Complaint that Nastav was aware plaintiff suffers from multiple sclerosis and that Nastav was frustrated with plaintiff's inability to keep up with his pace during class.  Squeezing plaintiff's neck while telling him with frustration that the material would be on the test, could be reasonably regarded as extreme and outrageous to permit recovery under Kansas law.  Accordingly, defendants' motion to dismiss the outrage claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 8) is **granted in part and denied in part**.  The motion is granted on the ADA claim (Count III) as to defendant Nastav and on the negligent hiring, retention, and supervision claim (Count IV) as to defendant JCCC.  The motion is denied on the outrage claim (Count II) as to defendant Nastav and denied without prejudice on the ADA claim (Count III) as to defendant JCCC.

**IT IS FURTHER ORDERED** that plaintiff shall file a motion for leave to amend the complaint no later than **November 2, 2011.**  Defendants shall respond **within fourteen (14) days** and at that time may renew their motion to dismiss the ADA claim and request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.

Dated: October 19, 2011

 S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE